MDR

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dino Bennetti, | No. CV 19-05417-PHX-DGC (JFM) |
| Plaintiff, | |
| v. | **AMENDED ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

On August 9, 2019, Plaintiff Dino Bennetti, who is confined in the Arizona State Prison Complex (ASPC)-Lewis in Buckeye, Arizona, filed a Complaint in the Superior Court of Maricopa County, Arizona, against former Arizona Department of Corrections Director Charles L. Ryan, the State of Arizona, Correctional Officer (CO) II Monstert, Lieutenant Casper, Sergeant Weston, and Deputy Wardens Catrell, Williamson, and Rode. On October 16, 2019, Defendant Ryan removed the case to this Court. In an October 23, 2019 Order, the Court concluded that the case was timely and properly removed, dismissed the Complaint because it was not filed on a court-approved form, and gave Plaintiff 30 days to file an amended complaint on the proper form.

On October 29, 2019, Plaintiff filed a First Amended Complaint (Doc. 7). The Court will order Defendants Casper, Catrell, Weston, Williamson, and Rode to answer Count One of the First Amended Complaint and will dismiss the remaining claims and Defendants without prejudice.

/ / /

## I. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

/ / /

## II. First Amended Complaint

In his two-count First Amended Complaint, Plaintiff seeks monetary damages from the following Defendants: Deputy Wardens Catrell, Williamson, and Rode; Lieutenant Casper; Sergeant Weston; CO II Munstert; and CO IVs Morris and Cameron.

In **Count One**, Plaintiff alleges he was subjected to cruel and unusual punishment in violation of the Eighth Amendment. Plaintiff claims that in June 2017, he was assaulted by three inmates in the "1-Charlie" building on ASPC-Lewis's Barchey Unit Blue side, was moved to the Refuse to House pod for twenty-four hours, and was then moved to ASPC-Safford for six months. (Doc. 7 at 4, 6.)[1]

Plaintiff contends that when he returned to ASPC-Lewis in January 2018, he was supposed to be housed in the 1-Charlie building, but the inmates who assaulted him were still there. (*Id.*) He requested protection because he feared for his life, but prison staff told him he had to refuse to house, orally and in writing, to get protection. (*Id.*) Specifically, he contends Defendant Casper told Plaintiff he could not do anything unless Plaintiff refused to house. (*Id.* at 6.) Plaintiff asserts that Defendant Casper's "bel[l]iger[e]nt response, and actions or inactions," violated his Eighth Amendment rights. (*Id.* at 6-7.)

Plaintiff apparently refused to house and was placed in the Refuse to House pod on Barchey Unit's Red side. (*Id.* at 4.) At some point, Plaintiff explained this course of events to Defendant Catrell, who asked whether Plaintiff's problems were caused by drugs or debts. (*Id.* at 4-5.) Plaintiff allegedly explained that neither situation was causing his problem and that inmates kept referring to him as a "faggot sex offender." (*Id.* at 5.) He claims Defendant Catrell told him that he was already in protective segregation and should "just house" and "deal with it." (*Id.*)

Plaintiff states he was next placed in "5 Echo" in the Barchey Unit, but after seven weeks was told that he needed to get off the yard or he was "dead." (*Id.*) He claims that as he tried to leave, three inmates attacked him. (*Id.*) Plaintiff contends that he notified a

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

medical officer about the assault and was told that he needed to refuse to house to get protection. (*Id*.) Plaintiff asserts that he "explained all this" to Defendant Catrell and even gave her alternative placement options, but she "ignored his plea[]s." (*Id*.) Plaintiff claims Defendant Catrell violated his Eighth Amendment rights, disregarded his safety, incorrectly assumed Plaintiff was the cause of his problems, and failed to ascertain that Plaintiff is a homosexual inmate who is "being extorted into performing sexual acts to stay on the yard." (*Id*. at 5-6.)

Plaintiff was transferred to ASPC-Lewis's Buckley Unit at some point. (*Id*. at 7.) He claims that he got a cellmate who was told that Plaintiff was a homosexual and a sex offender, and the cellmate told Plaintiff to leave. (*Id*.) Plaintiff alleges that he went to the Inmate Movement Office and explained to Defendant Weston and another sergeant "what was going on," but both individuals told Plaintiff to "stop being a coward and go handle your issue." (*Id*.) Plaintiff contends that while he was in the Inmate Movement Office, Defendant Williamson came in and he explained to her that he was being threatened because he was a homosexual and inmates believed he was a sex offender. (*Id*. at 8.) Plaintiff claims Defendant Williamson stated that she could not help Plaintiff unless he refused to house. (*Id*.) He asserts Defendant Weston's "malicious response" and Defendant Williamson's actions and inactions violated his Eighth Amendment rights. (*Id*. at 7-8.)

Plaintiff was moved to a different unit at ASPC-Lewis and eventually arrived at the Rast Max Refuse-to-House Unit. (*Id*. at 8.) He claims that on November 12, 2018, Defendant Rode came into the pod and Plaintiff "explained . . .what was going on." (*Id*.) Plaintiff alleges that Defendant Rode did not offer to help, and instead said he did not want Plaintiff there. (*Id*.) Plaintiff asserts that for two months Defendant Rode "made it his vendetta every week to tell this to the Plaintiff." (*Id*. at 8-9.) Plaintiff claims he "kept refusing for fear [for] his life" and kept getting Refuse-to-House tickets until Defendant Rode "got Plaintiff sent" to the Rast Unit's Close Side. (*Id*. at 9.) Plaintiff was assaulted

in less than a day. (*Id.*) Plaintiff contends that Defendant Rode's malicious comment, harassment, and actions or inactions violated his Eighth Amendment rights. (*Id.*)

Plaintiff contends Defendants' actions or inactions led to him being raped and assaulted by his cellmate in the Buckley Unit in January or February 2019. (*Id.* at 9-10.)

Plaintiff also asserts that on May 25, 2019, Defendant Munstert "verbally sexually assaulted" Plaintiff by calling him a "faggot" and telling him to "suck his d__k." (*Id.* at 9.) Plaintiff claims this was unprofessional and violated his Eighth Amendment rights. (*Id.*)

In **Count Two**, Plaintiff alleges he was subjected to retaliation in violation of his Fourteenth Amendment rights to due process and equal protection. Plaintiff asserts he was not treated equally and his due process rights were violated because Defendant Williamson failed to initiate an investigation, urged or misled Plaintiff to refuse to house, and punished Plaintiff for seeking protection. (*Id.* at 11.) Plaintiff claims Defendants Morris and Cameron enforced a process that is illegal—forcing Plaintiff to refuse to house to obtain protection and then punishing him for refusing to house—and this violated his rights to due process and equal protection. (*Id.*) Plaintiff asserts he lost medium-custody status as a result. (*Id.*)

**III. Discussion**

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

### A. Count One – Catrell, Williamson, Rode, Casper, and Weston

Liberally construed, Plaintiff has stated Eighth Amendment deliberate indifference claims against Defendants Catrell, Williamson, Rode, Casper, and Weston. The Court will require these Defendants to answer Count One.

### B. Count One – Defendant Munstert

The mere fact that Defendant Munstert may have made inappropriate sexual comments to Plaintiff does not state a claim for violation of the Eighth Amendment. Although physical sexual assault on an inmate by a prison official certainly violates the Eighth Amendment, *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000), and "prisoners have a right to be free from sexual abuse," *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004), "the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." *Austin*, 367 F.3d at 1171. The Ninth Circuit "has recognized that sexual harassment may constitute a cognizable claim for an Eighth Amendment violation, [but] has specifically differentiated between sexual harassment that involves verbal abuse and that which involves allegations of physical assault, finding [only] the latter to be in violation of the [C]onstitution." *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (citing *Schwenk*, 204 F.3d at 1198); *Austin*, 367 F.3d at 1171-72 (officer's conduct was not sufficiently serious to violate the Eighth Amendment where officer exposed himself to prisoner but never physically touched him); *Patrick v. Martin*, 402 F. App'x 284, 285 (9th Cir. 2010) (sexual harassment claim based on verbal harassment insufficient to state a claim under § 1983). "'Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'" *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (quoting *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979)); *see also Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment test and render it absurd."). The Court will dismiss Plaintiff's claim against Defendant Munstert in Count One.

### C. Count Two

#### 1. Retaliation

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims requires an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff's allegations do not contain sufficient facts to support a conclusion that Defendants Williamson, Morris, or Cameron retaliated against him for engaging in protected conduct. The Court will dismiss Plaintiff's retaliation claim in Count Two.

#### 2. Due Process

To the extent Plaintiff alleges his due process rights were violated because Defendant Williamson did not initiate an investigation, he has failed to state a claim. A prison official's "failure to follow the prison's own policies, procedures or regulations do not constitute a violation of due process if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). *See also Walker v. Sumner*, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (if prison complies with due process requirements, failure to comply with its own, more generous procedures is not a constitutional violation), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472, 484 (1995). Thus, the Court will dismiss this portion of Plaintiff's due process claim.

To the extent Plaintiff alleges Defendants Williamson, Morris, and Cameron violated his due process rights by punishing him for seeking protection, he has failed to state a claim. To determine whether an inmate is entitled to the procedural protections afforded by the Due Process Clause, the Court must look to the particular restrictions imposed and ask whether they "'present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.'" *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin*, 515 U.S. at 486). "Atypicality" requires not merely an empirical comparison, but turns on the importance of the right taken away from the prisoner. *See Carlo v. City of Chino*, 105 F.3d 493, 499 (9th Cir. 1997). To determine whether the sanctions are atypical and a significant hardship, courts look to the prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996).

Plaintiff has not identified any restrictions imposed on him as a result of refusing to house and, therefore, the Court cannot conclude that he was subjected to atypical and significant hardships. The Court will dismiss this portion of Plaintiff's due process claim.

### 3. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing that the defendant intentionally discriminated against the plaintiff based on the plaintiff's membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), or that similarly situated individuals were intentionally treated differently without a rational basis for the difference in treatment, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Plaintiff does not allege that he is a member of a protected class, and his allegations are insufficient to state a class-of-one claim. The Court will dismiss his equal protection claim.

///

///

**IV. Warnings**

    **A. Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

    **B. Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

    **C. Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

    (1) Count Two is **dismissed** without prejudice.

(2) Defendants Munstert, Morris, and Cameron are **dismissed** without prejudice.

(3) Defendants Catrell, Casper, Williamson, Weston, and Rode must answer Count One.

(4) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Catrell, Casper, Williamson, Weston, and Rode.

(5) Plaintiff must complete[2] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(9) A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service**

---

[2] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10) The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

    (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

    (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11) Defendants Catrell, Casper, Williamson, Weston, and Rode must answer Count One of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13) This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 27th day of November, 2019.

David G. Campbell
Senior United States District Judge